# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| ROBERT E. KEANE, JR., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 1:20-CV-11427-DJC |
| | ) | |
| v. | ) | |
| | ) | |
| ALPS FUND SERVICES, INC. | ) | |
| DST SYSTEMS, INC. and | ) | |
| SS&C TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

_____

### DEFENDANTS ALPS FUND SERVICES, INC., DST SYSTEMS, INC. AND SS&C TECHNOLOGIES, INC.'S BRIEF IN SUPPORT OF <u>MOTION TO COMPEL ARBITRATION</u>

Respectfully submitted,

ALPS FUND SERVICES, INC.,
DST SYSTEMS, INC., &
SS&C TECHNOLOGIES, INC.

Dated: September 18, 2020      By:   */s/ Jeffrey A. Fritz*

Jeffrey A. Fritz (BBO# 658195)
FISHER & PHILLIPS LLP
200 State Street, 7th Floor
Boston, Massachusetts 02109
Tel: (617) 722-0044
Fax: (617) 532-5899
*jfritz@fisherphillips.com*

Its Attorneys

## I. Introduction

Under the Federal Arbitration Act ("FAA") 9 U.S.C. § 1 *et seq.*, and the Massachusetts Uniform Arbitration Act, M.G.L. c. 251 § 2(a), Defendants ALPS Fund Services, Inc., DST Systems, Inc., and SS&C Technologies, Inc. are entitled to an order compelling Plaintiff Robert Keane to arbitrate all his employment claims under the terms of the DST Arbitration Program Agreement ("APA").

Plaintiff voluntarily entered into the APA at the start of his employment.[1]  The APA informed Plaintiff that "[a]greement to this APA by an Associate is entirely voluntary because all Associates have the right to opt out in writing within 30 days after receipt of notice of and access to this APA."  (Roustio Dec., ¶7, Exhibit B, APA at 4.)  It informed Plaintiff and other employees that "[t]his APA creates a contract that binds DST and each Associate to arbitrate employment-related legal claims. . ." (*See id.* at  5.)  It even expressly "encourage[d] Associates, if they desire, to secure advice from an attorney or any other person regarding this APA and their right to opt out of this APA." (*See id.* at 4.)   Plaintiff did not opt out and thereby agreed to arbitrate "all legal claims arising out of or relating to employment."  (*See id.* at 3)

The enforcement of employment arbitration agreements is routine and mandated under both Federal and Massachusetts law.  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26-27 (1991); *Freitas v. Comcast Cable Commc'ns Mgmt. LLC*, No. 19-12470-PBS, 2020 WL 1495884 (D. Mass. 2020); *Barrasso v. Macy's Retail Holdings, Inc.*, No. 15-13098-ADB, 2016 WL 1449567 (D. Mass. 2016); *Joule, Inc. v. Simmons*, 459 Mass. 88 (2011).

---

[1] While this Arbitration Agreement is voluntary, the law so strongly favors arbitration that an agreement is enforceable even if required as a condition of employment.  *See, e.*g., *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26-27 (1991).

In this case, the existence of the arbitration agreement is established beyond dispute by the Statement of Material Facts.  (*See infra* at 3-8.)  Plaintiff has identified no ground to dispute the agreement.  There is no valid ground to do so.  The arbitration agreement at issue was introduced by Defendant DST in July 2016 as an updated arbitration program agreement.  Prior to the updated agreement, federal and state courts in Missouri (location of DST's headquarters) enforced the previous substantially identical DST arbitration agreement with the same 30-day opt out provision.  *Zanders v. DST Systems, Inc.*, No. 09-0521-CV-W-GAF (W.D.Mo. Feb. 5, 2010) (attached hereto as Exhibit A); *Hang and Xiong v. DST Systems, Inc.,* No. 1316-CV12273 (Jackson Co. Cir. Ct., Aug. 28, 2013) (attached hereto as Exhibit B).

Plaintiff's Petition alleges Defendants failed to pay him "earned commissions."  Count I alleges violation of the Massachusetts Wage Act (M.G.L. c. 149 § 148).  Count II alleges breach of contract.  There is no doubt these claims are covered by the APA, which states "[t]his APA covers all legal claims arising out of or relating to employment" and then proceeds to specifically reference "overtime or other compensation disputes; . . . breach of contract; and other statutory or common law claims." (Roustio Dec., ¶7, Exhibit B, APA at 3)

In addition to the claims in the Petition, Plaintiff has filed a separate age discrimination complaint with the Massachusetts Commission Against Discrimination ("MCAD").  (Roustio Dec., ¶ 17, Ex. E)  Under clear Massachusetts Supreme Judicial Court authority, Defendants also are entitled to an order compelling Plaintiff to arbitrate the age discrimination claims pending before the MCAD.  *See Joule, Inc. v. Simmons*, 459 Mass. 88 (2011).   The APA expressly covers "employment discrimination . . . based on federal, state or local statute."  (Roustio Dec., ¶7, Exhibit B, APA at 3)

Accordingly, Defendants are entitled to: (a) dismissal, or alternatively a stay, of the pending action; and (b) an order compelling plaintiff to arbitrate all employment claims covered by the APA in a single arbitration, including without limitation, the commission claims in the pending action and the age discrimination claims in the pending MCAD complaint.

## II. Statement of Material Facts

1. The three named defendants, which Plaintiff alleges were his joint employer, are the following corporations:

   a. Defendant ALPS Fund Services, Inc. ("ALPS").  ALPS is a corporation with headquarters in Denver, Colorado, which provides asset servicing solutions to financial services industry clients and other clients located both inside and outside the State of Colorado.  ALPS is a wholly owned subsidiary of ALPS Holdings, Inc., which is a wholly owned subsidiary of Defendant DST Systems, Inc. (Roustio Dec., ¶ 3)

   b. Defendant DST Systems, Inc. ("DST").  DST is a corporation with headquarters in Kansas City, Missouri, which provides automated recordkeeping and other automated information processing and computer software services to financial services industry clients and other clients located both inside and outside the State of Missouri.  DST is a wholly owned subsidiary of defendant SS&C Technologies, Inc. (Roustio Dec., ¶4)

   c. SS&C Technologies, Inc. ("SS&C").  SS&C is a corporation with headquarters in Windsor, Connecticut, which provides software and software-enabled services to financial services industry clients and other clients located both inside and outside the State of Connecticut.  SS&C is the parent of DST. (Roustio Dec., ¶5)

2. On July 15, 2016, DST implemented the DST Arbitration Program Agreement ("APA"), which applied to Plaintiff Keane when he started employment in December 2016 and which is the subject of the pending motion to compel arbitration. (Roustio Dec., ¶7, Exhibit B)

3. The APA was implemented "as a single uniform program across the enterprise of DST Systems, Inc.," covering claims by employees against "DST Systems, Inc." and "any DST affiliated entity."  (Roustio Dec., ¶8, Exhibit B)

4. On December 6, 2016, ALPS, offered Plaintiff employment as a Director of National Accounts. (Roustio Dec., ¶10, Exhibit C)

5. On December 12, 2016, Plaintiff accepted the job offer and started employment with ALPS on December 19, 2016. (Roustio Dec., ¶11, Exhibit C)

6. In the "on boarding" process for new employees such as Plaintiff, ALPS uses *Workday*, which is an electronic human resources recordkeeping system. Employees create a private personal password and then use the password to log into *Workday* through the internet for various recordkeeping actions, such as emergency contacts, personal information, initial tax withholding elections, timekeeping, and performance reviews. (Cone Dec., ¶2)

7. On December 14, 2016, at 8:21 a.m. PST,[2] as part of the onboarding process for Plaintiff, a welcome email was sent to Plaintiff's home email address at *robertekeanejr@comcast.net* welcoming him to employment. The email asked him to log into *Workday*, create a private password, and start the "onboarding" process. The full email read as follows:

> Welcome to DST! We are so glad you decided to join us! We are busy at work here preparing for your arrival and would like for you to get ready as well. DST utilizes an electronic onboarding system called *Workday* to help you get some things in order to join us.
>
> Please log in to *Workday* and complete a few tasks. Don't worry, you won't have to print anything, we will direct you to a couple of items online and help you get your paperwork in order so you can start off ready to go.
>
> Click here to log on and follow these steps:
>
> https://wd5.my*Workday*.com/dst/login.flex
>
> User Name will be your Employee ID: 214171
>
> Password:
>
> • 1st initial of your legal first name capitalized
>
> • 1st initial of your legal last name capitalized
>
> • The two digits of your birth month
>
> • The last two digits of your birth year
>
> • Exclamation point
>
> Example John Doe/September 1988 = JD0988!

---

[2] The Data Center for *Workday* records is located in Portland, Oregon, which resulted in *Workday* records reflecting PST times during December 2016. Plaintiff resided in Massachusetts. Presumably, he was in the EST time zone at the time of his activities recorded in *Workday* in December 2016.

After logging in you will be required to change your password.

Go ahead and login to get started!

Need help?
Call our People Center at 1-800-874-0174 (anytime M-F from 7am-7pm CT).

See you soon!

(Cone Dec., ¶ 3, Exhibit A)

8. On December 14, 2016, at 3:29 p.m. PST, Plaintiff logged into *Workday* using the temporary password, received a message that he was required to change his temporary password, and, at 3:31 p.m. PST, Plaintiff created his own private personal password. (Cone Dec., ¶ 4, Exhibit B)

9. Since Plaintiff created his private personal password on December 14, 2016, at 3:31 p.m. PST, he never changed it during the time period of his employment through February 24, 2020, when he was notified of the termination of his employment in a force reduction. (Cone Dec., ¶5)

10. During the time period from December 14, 2016 through February 24, 2020, Plaintiff used his password on 79 occasions to log into *Workday,* including 3 times prior to the start of his employment and 76 times during his employment. (Cone Dec., ¶ 3, Exhibit B)

11. On December 14, 2016, at 3:49 p.m. PST, after creating his private personal password, Plaintiff entered his emergency contacts into *Workday*. As his primary contact, Plaintiff entered the name, home address, email address and telephone number of his spouse.  As his alternative contact, Plaintiff entered the name, home address and telephone number of his daughter. (Cone Dec., ¶ 7, Exhibits C, D)

12. Two days later, on December 16, 2016, at 1:13 p.m. PST, Plaintiff again used the private personal password he created on December 14, 2016 to initiate a *Workday* session. (Cone Dec., ¶ 8, Exhibit B)

13. On December 16, 2016, at 1:18 p.m. PST, Plaintiff entered personal information regarding Country of Birth, Region of Birth, City of Birth, Marital Status, Marital Status Date, Race/Ethnicity, Citizenship Status, and Military Status. (Cone Dec., ¶ 9, Exhibits A, E)

14. On December 16, 2016, at 1:56 p.m. PST, Plaintiff confirmed Robert Edward Keane, Jr. as his name, updated his primary phone and entered an additional phone. (Cone Dec., ¶ 10, Exhibit F)

15. On December 16, 2020, at 2:00 p.m. PST, Plaintiff completed and submitted the electronic *Signature Statements* for the DST Policies and for the DST Arbitration Program

Agreement.  The *Workday* section was titled **DST Policies and DST Arbitration Program Agreement**, and the part where plaintiff submitted his electronic *Signature Statements* read as follows:

Document          PDF **DST Policies**

Instructions      In this step, please carefully review the *Signature Statement.*  Click *I Agree* to indicate you understand the *Signature Statement.*

Signature Statement      When you click the "I Agree" checkbox below, you are agreeing that you understand the following: (a) the attached document sets forth updated DST Policies provided to employees of DST organizations; (b) you are expected to read and comply with the policies, including the Equal Employment Opportunity Policy, which prohibits unlawful discrimination, harassment or retaliation and provides a complaint procedure for you to follow for any violations of the policy; and (c) the policies may be modified in the future and the current version of the policies always will be available to you at DST Connect.

I Agree

Document          PDF **DST Arbitration Program Agreement**

Instructions      In this step, please carefully review the *Signature Statement.*  Click *I Agree* to indicate you understand the *Signature Statement* and then click *Submit* at the bottom of the page.

Signature Statement      When you click the "I Agree" checkbox below, you are agreeing that you understand the following: (a) the attached document is the new DST Arbitration Program Agreement ("APA") offered to employees of DST organizations as a uniform dispute resolution procedure under which DST agrees to pay the costs of arbitration and mediation; (b) DST is providing you with 30 days to read and consider the APA; and (c) you will be considered to have agreed to the APA if you do not opt out in writing by certified mail return receipt requested within 30 days as provided for in the APA.   THE   ATTACHED   DST   ARBITRATION   PROGRAM AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES.

I Agree

Comment          _____

Submit          Save for Later          Cancel

(Cone Dec., ¶ 11, Exhibit G)

16. On December 16, 2016, at 2:00 p.m. PST, when Plaintiff electronically submitted "I Agree" to the *Signature Statement* for the DST Arbitration Program Agreement, he had access to the full DST Arbitration Program Agreement by clicking on the PDF copy of the program immediately above his *Signature Statement*. (Cone Dec., ¶ 12, Exhibit G)

17. From 2:00 p.m. PST on December 16, 2016 when Plaintiff submitted his electronic signature until Plaintiff was informed of his termination on February 24, 2020, Plaintiff had continued access to the DST Arbitration Program Agreement through *Workday*. (Cone Dec., ¶ 13)

18. Once Plaintiff started active ALPS employment on December 19, 2016, he also had continued access to the DST Arbitration Program Agreement through the DST Intranet at *DSTConnect*. (Cone Dec., ¶14)

19. On December 16, 2016, after Plaintiff submitted his electronic signature for the DST Arbitration Program Agreement, Plaintiff continued to take actions on *Workday:*

   a. At 2:03 p.m. PST, Plaintiff submitted the employee section of his Form I-9.

   b. At 2:06 p.m. PST, Plaintiff agreed to Direct Deposit terms and provided bank account information, including account number and routing number.

(Cone Dec., ¶15, Exhibit A)

20. On December 18, 2016, at 6:51 a.m. PST, Plaintiff again used the private personal password he created on December 14, 2016 to initiate a *Workday* session.

   a. At 7:00 a.m. PST, Plaintiff submitted his Massachusetts State Withholding Elections.

(Cone Dec., ¶16, Exhibit A, B)

21. On December 19, 2016, at 1:23 p.m. PST, Plaintiff again used the private personal password he created on December 14, 2016 to initiate a *Workday* session.

   a. At 1:26 p.m. PST, Plaintiff submitted his Federal Withholding Elections.

(Cone Dec., ¶17, Exhibits A, B)

22. The DST Arbitration Program Agreement stated the following with respect to the right of Plaintiff to opt of out the agreement:

**Agreeing to this Arbitration Program Agreement**

Agreement to this *APA* by an Associate is entirely voluntary because all Associates have the right to opt out in writing within 30 days after receipt of notice of and access to this *APA*. DST provides the 30 day opt out period because we want

Associates to participate in this Arbitration Program, but we do not want to require Associates to make a quick decision. We want to provide Associates with plenty of time to consider whether they want to voluntarily agree to or opt out of this *APA*.

For each Associate who applies for, continues or starts employment or service after July 1, 2016 and does not opt out in writing within 30 days after he/she receives notice of and access to this *APA*, the Associate and DST shall be considered to have agreed as a binding contract to waive their right to a judge or jury trial and to resolve employment-related legal claims under the terms of this *APA* instead of through a lawsuit. In order to opt out of this *APA*, an Associate must send a letter by Certified Mail/Return Receipt Requested to the DST Chief Human Resource Officer, 333 W. 11th St., Kansas City, Missouri 64105, stating his/her desire to opt out. The opt out letter may simply state the following: "I wish to opt out of the DST Arbitration Program Agreement." The opt out letter must be postmarked within 30 days after the Associate receives notice of and access to this *APA*. There will be no retaliation against any Associate for opting out of this *APA*. Upon request, DST will reimburse the Associate for postage and other reasonable expenses of mailing an opt out letter.

If an Associate properly opts out of this *APA* and was covered by a prior existing Arbitration Policy or Program as of the July 1, 2016 date of the implementation of this *APA,* then the prior Arbitration Program or Policy shall remain in effect for the Associate and the Associate shall remain in the same opted out or not opted out status as he was on July 1, 2016 under the existing Arbitration Policy or Program. The prior Arbitration Program or Policy also remains in effect if an Associate does not opt out of this *APA*, but for whom this *APA* is later found for some reason not to be a valid and enforceable agreement.

Associates are welcome to contact the DST People Center if they have any questions or need further information regarding this *APA* or their right to opt out of this *APA*. We also encourage Associates, if they desire, to secure advice from an attorney or any other person regarding this *APA* and their right to opt out of this *APA*. Any Associate who does not mail an opt out letter by Certified Mail/Return Receipt Requested to the DST Chief Human Resource Officer, 333 W. 11th St., Kansas City, Missouri 64105 postmarked within 30 days after the Associate receives notice of and access to this *APA* shall be considered to have agreed to this *APA,* shall be automatically covered by this *APA,* and shall be contractually obligated to resolve legal claims under the terms of this *APA* and not through a lawsuit with a judge or jury trial.

(Roustio Dec., ¶13, Exhibit B)

23. Plaintiff did not submit an opt out of the APA within 30 days as provided for under the terms of the program and as stated in his *Signature Statement* signed on December 16, 2016. (Roustio Dec., ¶ 15)

24. Plaintiff has never submitted an opt out of the APA. (Roustio Dec., ¶ 16)

25. On July 31, 2020, Defendants received service from the Massachusetts Commission Against Discrimination of a Complaint filed by Plaintiff alleging age discrimination. (Roustio Dec., ¶ 17, Ex. E)

### III. Argument

This motion is properly presented for ruling by this Court – rather than ruling by an Arbitrator – because the Arbitration Program Agreement expressly provides "[a]ny dispute regarding the enforceability of this APA, of the enforceability of this APA's prohibition on class action, collective action, and multiple Associate claims, shall be determined by the courts and not by the Arbitrator."  (Roustio Dec., ¶13, Exhibit B, APA at 3.)  While not necessary to trigger application of the FAA, the APA in this case provides "[t]he Federal Arbitration Act governs the enforcement of this *APA* and proceedings under this *APA*, other than as modified by this *APA*." (Roustio Dec., ¶13, Exhibit B, APA at 2.)

Under the FAA, the first issue is whether there is an enforceable arbitration contract, i.e., whether the elements of a contract exist under Massachusetts law.  *Freitas v. Comcast Cable Commcn's Mgmt. LLC*, No. 19-12470-PBS, 2020 WL 1495884 (D. Mass. 2020), states the applicable standard for enforcement:

> To compel arbitration, a defendant must establish that "a valid agreement to arbitrate exists, that [the defendant] is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope." *Nat'l Fed. of the Blind v. The Container Store, Inc.*, 904 F.3d 70, 79 (1st Cir. 2018) (quoting *Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino*, 640 F.3d 471, 474 (1st Cir. 2011)).

The Statement of Material Facts, *supra,* clearly establish the prerequisites for enforcement under *Freitas.*  Additionally, prior to this case, Federal and State courts in Missouri (the location of Defendant DST's headquarters) have applied the same FAA and general contract standards in granting motions to compel arbitration under a predecessor DST arbitration agreement that was substantially identical to the APA at issue in this case.  In *Zanders v. DST Systems, Inc.*, No. 09-

0521-CV-W-GAF (W.D. Mo. Feb. 5, 2010) (attached hereto as Exhibit A), U.S. District Judge Fenner held a binding contract existed, in language squarely applicable to the DST Arbitration Program Agreement at issue in this case:

> The plain language of the Policy makes clear that it is a binding contract, requiring both Plaintiffs and Defendant to arbitrate all employment-related legal claims, and provides a detailed listing of legal claims covered by the Policy.   Further, Plaintiff was informed of her opportunity to opt out of the Policy and the procedure required to opt out in two separate documents, the acknowledgement form and the Policy, but failed to take the steps necessary to do so.

Three years later, in Jackson County State Circuit Court, the same predecessor DST arbitration agreement was found to be an enforceable contract, in a summary order compelling arbitration after extensive briefing by both parties.  *Hang and Xiong v. DST Systems, Inc.,* No. 1316-CV12273 (Jackson Co. Cir. Ct, Aug. 28, 2013) (attached hereto as Exhibit B).

Numerous Massachusetts federal and state court cases provide full support for the enforcement of APA in this case.   In *Freitas, supra,* the court ordered arbitration of multiple claims, including commission and discriminations claims under the same Massachusetts statutes relied on by Plaintiff in this case.   The *Freitas* arbitration agreement also included an employee opt-out process of approximately 30 days, similar to the 30-day period in the APA at issue in the present case.   Other Massachusetts cases have enforced similar arbitration agreements with comparable opt-out provisions.  *See, e.g., Okereke v. Uber Techs., Inc.*, No. 16-cv-12487-PBS, 2017 WL 6336080, at \*6 (D. Mass. Jun. 13, 2017) (finding arbitration agreement valid where employee clicked "I accept" on Uber application and did not opt out within 30 days); *Barrasso v. Macy's Retail Holdings*, No. 1:15-cv-103098-ADB, 2016 WL 1449567, at \*6 (D. Mass. Apr. 12, 2016) (finding arbitration agreement valid where employee signed form electronically and did not opt out within 30 days).  *See also Salvi v. TRW Automotive U.S. LLC*, No. 11–40085–FDS, 2012

WL 274755 (D. Mass. 2012) (enforcement of employer's "Problem Resolution Policy" as arbitration agreement).

There is no legitimate dispute in this case over the fact that Plaintiff was provided a meaningful opportunity to opt out.  On December 16, 2016, Plaintiff submitted "I Agree" to a *Signature Statement* that expressly stated he agreed and understood "you will be considered to have agreed to the APA if you do not opt out in writing by certified mail return receipt requested within 30 days as provided for in the APA."  (Roustio Dec., ¶13, Exhibit B, APA at 4.)  The DST Arbitration Program Agreement further informed Plaintiff as follows:

> For each Associate who applies for, continues, or starts employment or service after July 1, 2016 and does not opt out in writing within 30 days after he/she receives notice of and access to this APA, the Associate and DST shall be considered to have agreed as a binding contract to waive their right to a judge or jury trial and to resolve employment –related legal claims under the terms of this APA instead of through a lawsuit.

(Roustio Dec., ¶13, Exhibit B, APA at 4.)  On December 16, 2016, when Plaintiff agreed to the *Signature Statement*, he also was provided access to a PDF copy of the entire DST Arbitration Program Agreement.  The PDF link to the program was directly about the *Signature Statement.* Since that time, he continuously had access to the APA through *Workday* and, commencing December 19, 2016, when he started employment, through the *DSTConnec*t, which is the DST Intranet site.

There also is no doubt that Plaintiff's commission and discrimination claims are covered by the APA, which expressly states "[t]his APA covers all legal claims arising out of or relating to employment" and then proceeds to specifically reference "overtime or other compensation disputes; . . . breach of contract; and other statutory or common law claims" and "employment discrimination . . . based on federal, state or local statute." (Roustio Dec., ¶13, Exhibit B, APA at 3.)

There similarly is no doubt that consideration was provided to Plaintiff. The consideration included, but was not limited to, the promise to submit to arbitration any claims against Plaintiff, the promise to be bound by the results of the arbitration process, and the promise to pay all the fees of the arbitrator and the charges by the American Arbitration Association. (Roustio Dec., ¶13, Exhibit B, APA at 1-3.)

This motion to compel arbitration includes the separate age discrimination claim Plaintiff recently filed with the MCAD. (Roustio Dec., ¶17, Exhibit E)  In summary form, the grounds to compel arbitration of the age claim are as follows

1. This motion is to enforce the arbitration agreement entered into by Plaintiff;

2. The arbitration agreement clearly covers the age discrimination claim:  "This APA covers all legal claims arising out of or relating to employment" with specific reference to ""employment discrimination . . . based on federal, state or local statute."  (Roustio Dec., ¶13, Exhibit B, APA at 3); and

3. In *Joule, Inc. v. Simmons*, 459 Mass. 88 (2011), the Massachusetts Supreme Judicial Court clearly stated the applicable principle for compelling an individual with a pending MCAD discrimination claim to arbitrate the claim:  "If an employer and employee enter into a valid and sufficiently clear agreement to arbitrate any and all disputes relating to discrimination, then the party seeking arbitration of such a dispute is entitled to have the agreement enforced."

The *Joule* case involved the same situation as the present case with a plaintiff who had filed a discrimination complaint with the MCAD.  *Joule* made clear that even though the employer was entitled to an order that the plaintiff arbitrate the covered discrimination claim, the order did not deprive the MCAD of jurisdiction to investigate and process the claim.  It merely required the Plaintiff to assert his personal claim in arbitration in accordance with his arbitration agreement.  The MCAD retains jurisdiction and can proceed as it deems appropriate, but the plaintiff cannot directly pursue his personal claim within the MCAD.  *See Joule*, 459 Mass. at 98. The same rationale and approach applies to the present case.

Plaintiff may argue that he has not pleaded the MCAD age discrimination claim in this case.  That is true but irrelevant.  The issue raised by this motion is the enforcement of the arbitration agreement under the FAA and the *Joule* holding, not the defense of the age discrimination claim.  There FAA and contact issues are the same for the pleaded commission claim as they are for the MCAD age discrimination claim.  The determinative issues are identical with respect to the existence of an arbitration agreement and the compelling of arbitration.  The arbitration agreement entered into by Plaintiff covered both claims and should be enforced with respect to both claims. [3]

### IV. Conclusion

There is a strong public policy favoring arbitration.  *See e.g., Bercovitch v. Baldwin School, Inc.*, 133 F.3d 141, 147 (1st Cir. 1998).  State and federal courts presume arbitrability, subject to the condition that generally applicable contract defenses, such as fraud, duress, or unconscionability, may be used to invalidate arbitration agreements.  *See, e.g., Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996); *Miller v. Cotter*, 448 Mass. 671, 679 (2007).  The party opposing arbitration bears the burden of showing the agreement is not enforceable.  *See Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 92 (2000).  Here, the APA is  a valid and enforceable contract.  Plaintiff has identified no basis to invalidate the agreement and there is no basis to do so.

---

[3] There are both legal and practical reasons for the Court to order arbitration of the age discrimination claim in addition to the commission claim.  If the order compelling arbitration did not include the age claim, then defendants would need to file a separate lawsuit to compel arbitration of the age claim.  That would cause delay, expense, and other obstacles to the efficient resolution of all disputes in arbitration that is the purpose of the agreement and the objective of the FAA.  Additionally, if Defendants did not properly seek arbitration of the age discrimination clam in this motion, it might raise a waiver issue.  Most important, the relevant facts and legal issues related to the coverage and enforcement of the DST Arbitration Program Agreement claim with respect to the age discrimination claim are fully before the Court and arbitration should be ordered.

Respectfully submitted,

ALPS FUND SERVICES, INC.,
DST SYSTEMS, INC., &
SS&C TECHNOLOGIES, INC.

Dated: September 18, 2020       By:   _____/s/ Jeffrey A. Fritz_____
                                     Jeffrey A. Fritz (BBO# 658195)
                                     FISHER & PHILLIPS LLP
                                     200 State Street, 7th Floor
                                     Boston, Massachusetts 02109
                                     Tel: (617) 722-0044
                                     Fax: (617) 532-5899
                                     *jfritz@fisherphillips.com*

                                     Its Attorneys

## LOCAL RULE 7.1 CERTIFICATION

I certify Defendants' counsel has conferred with Plaintiff's counsel and have attempted in good faith to resolve or narrow the matter at issue in this motion.


_____/s/ Jeffrey A. Fritz_____
                        Jeffrey A. Fritz


## CERTIFICATION

I, Jeffrey A. Fritz, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on September 18, 2020.


_____/s/ Jeffrey A. Fritz_____
                        Jeffrey A. Fritz