UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT E. KEANE JR., )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>ALPS FUND SERVICES, INC., )<br>DST SYSTEMS, INC., and )<br>SS&C TECHNOLOGIES, INC., )<br>)<br>Defendants. )<br>) | Civil Action No. 20-cv-11427-DJC |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                       **December 11, 2020**

**I.   Introduction**

Plaintiff Robert E. Keane Jr. ("Keane") filed this lawsuit against Defendants ALPS Fund Services, Inc. ("ALPS"), DST Systems, Inc. ("DST") and SS&C Technologies, Inc. ("SS&C") (collectively, "Defendants") alleging a violation of the Massachusetts Wage Act and a breach of contract claim for failing to pay his earned commissions upon his termination. D. 1-1. Keane separately filed age discrimination claims against Defendants, now pending before the Massachusetts Commission Against Discrimination ("MCAD"). D. 18-1. Defendants have now moved to compel arbitration on Keane's Massachusetts Wage Act and breach of contract claims, as well as the discrimination claims currently before the MCAD. D. 13. For the reasons stated below, the Court ALLOWS the motion to compel arbitration as to the two claims pending before

1

this Court and orders a stay of this pending action pending arbitration, but DENIES the motion to compel as to the discrimination claims pending before MCAD.

## II.     Factual Background

### A.     Keane's Employment with Defendants

Keane began his employment jointly for Defendants as the Director of National Accounts in December 2016. D. 1-1 ¶ 6. Keane's base salary was $175,000 and he had incentive compensation in the range of $300,000 to $350,000. Id. ¶ 8. As alleged, Keane met all his performance expectations but starting in May 2019, the amount of his commission declined without explanation. Id. ¶¶ 10, 13. On February 28, 2020, Defendants terminated Keane as part of a reduction in force. Id. ¶ 9. Keane alleges that Defendants failed to pay him his commission for the first two-thirds of the first quarter of 2020. Id. ¶ 12.

### B.     The Arbitration Agreement

Defendant ALPS uses an electronic human resources recordkeeping system called Workday to "on-board" new employees. D. 13-2 ¶ 2, 3. As part of Keane's on-boarding process, Keane electronically completed a Signature Statement and agreed to a DST Arbitration Program Agreement ("APA"), the agreement at issue here, on December 16, 2020. Id. ¶ 11; see D. 18-2. The electronic Signature Statement stated that if Keane clicked "I Agree" in the checkbox, he was "agreeing that you understand the following: (a) the attached document is the new DST Arbitration Program Agreement ('APA') offered to employees of DST organizations as a uniform dispute resolution procedure under which DST agrees to pay the costs of arbitration and mediation . . . The attached DST Arbitration Program Agreement contains a binding

arbitration provision which may be enforced by the parties." D. 13-2 ¶ 11 (last sentence appearing in caps).

The APA covers all employees "who receive notice of this APA and do not properly opt-out" and bring claims against DST or any DST affiliated entity. D. 18-2 at 2 (the APA). The APA is voluntary and DST employees are given thirty days after they received notice of the APA to opt-out in writing to its terms. Id. If an employee does not opt-out of the APA, they "shall be considered to have agreed to this APA." Id. To opt-out of the APA, an employee must send a letter postmarked within thirty days of receipt of the APA by certified mail to the DST Chief Human Resource Officer stating their intention to opt-out. Id. at 5. "There will be no retaliation against any Associate for opting out of this APA." Id. The APA also states that there will be "no adverse action of any kind" for employees who pursue individual claims under the APA, notify fellow employees of potential claims, assist fellow employees in the pursuit of individual claims, encourage fellow employees to pursue individual claims under the APA, opt-out or encourage other employees to opt-out of the APA, or oppose any provision of the APA. Id. at 6.

The "APA covers all legal claims arising out of or relating to employment, application for employment, termination of employment, or independent contractor activities, except for claims specifically excluded under the terms of this APA." Id. at 4. This includes but is not limited to claims of "wrongful discharge under statutory law or common law; employment discrimination, retaliation . . . overtime or other compensation disputes . . . breach of contract; and other statutory or common law claims." Id.

The APA also "does not prevent or discourage an Associate from filing and pursuing an administrative proceeding before the Equal Employment Opportunity Commission, the National

Labor Relations Board, or any other federal, state, or local administrative agency or otherwise providing information to any such government agency . . ." Id. at 5. If, however, an employee "chooses to pursue a legal claim in addition to and/or following completion of such administrative proceedings, or if there is some other legal proceeding related to the claim following completion of the administrative proceedings, the claim then shall be subject to the terms of this APA." Id.

### III. Procedural History

Keane instituted this action in Suffolk Superior Court on May 11, 2020. D. 1-1. Defendants removed the case to this Court on July 28, 2020. D. 1. Separately, Keane filed a complaint against Defendants with MCAD alleging violations of the Age Discrimination in Employment Act ("ADEA"). D. 18-1. Defendants have now moved to compel Keane to arbitrate the claims in this pending action, as well as his age discrimination claims before MCAD, pursuant to the APA and stay or dismiss this case. D. 13. The Court heard the parties on the pending motion and took the matter under advisement. D. 26.

### IV. Motion to Compel Arbitration

#### A. Legal Standard

The "FAA compels judicial enforcement of . . . written arbitration agreements." Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 111 (2001). Under the FAA, a "written provision in any . . . contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The "FAA was designed to promote arbitration," AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 345 (2011), and "[s]ection 2

embodies the national policy favoring arbitration." Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006).

A party who is seeking to compel arbitration must show the existence of a valid and binding agreement to arbitrate, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and the claim comes within the clause's scope. Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino, 640 F.3d 471, 474 (1st Cir. 2011); Acher v. Fujitsu Network Communications, Inc., 354 F. Supp. 2d 26, 36 (D. Mass. 2005).

### B. The APA Here Is Valid and Enforceable

Defendants have established by a preponderance of the evidence that the APA is a valid and binding agreement to arbitrate between the parties. In general, "principles of state contract law control the determination of whether a valid agreement to arbitrate exists." Campbell v. General Dynamics Government Systems Corp., 407 F.3d 546, 552 (1st Cir. 2005) (citations omitted). The formation of a contract requires a definite offer, acceptance, and consideration. Vadnais v. NSK Steering Sys. Am., Inc., 675 F. Supp. 2d 205, 207 (D. Mass. 2009).

Defendants offered Keane the APA on Workday and requested that Keane agree to the terms of the APA. D. 13-2 ¶ 11. The APA stated that Keane could opt-out in writing by certified mail within thirty days, but if he did not do so, he would be considered to have agreed to the APA. D. 18-2 at 2. Keane accepted this offer on December 16, 2016 when he electronically submitted that he agreed to the APA. Id. ¶¶ 12-13. As evidence of same, Defendants provide sworn affidavits from two employees, Rebecca Cone ("Cone"), the Workforce Systems/HRIS Analyst at DST, D. 13-2, and David Roustio ("Roustio"), DST's associate relations manager. D. 13-1.

Keane argues that the Court may not rely on Defendants' proffered declarations because the affiants lack personal knowledge. D. 18 at 5. Cone and Roustio's sworn declarations, however, state that they have personal knowledge of the information set forth in their respective declarations. D. 13-2 ¶ 1; D. 13-1 ¶ 1. Cone and Roustio, moreover are "qualified affiant[s] whose declarations sufficiently authenticate the business records [they] have provided." Hays v. Jefferson Capital Systems, LLC, No. 15-cv-14025-GAO, 2017 WL 449590, at *2 (D. Mass. Feb. 2, 2017) (citing Wallace Motor Sales, Inc. v. Am. Motors Sales Corp., 780 F.2d 1049, 1061 (1st Cir. 1985) and Schwartz v. CACH, LLC, No. 13-12644-FS, 2014 WL 298107, at *2 n.2 (D. Mass. Jan. 27, 2014)). Cone attests that she is "responsible for the administration, support, operation and maintenance of Workday," D. 13-2 ¶ 2, and Roustio attests that he has knowledge of the information in his affidavit in part "based on a review of business and human resource records that are within my area of responsibility as an Associate Relations Manager for DST." D. 13-1 ¶ 1. Thus, Cone and Roustio's declarations may be considered, given their personal knowledge and custodial responsibilities, particularly where the Court may look beyond the pleadings and rely upon admissible evidence to decide whether the APA is an enforceable agreement to arbitrate.

Moreover, the affidavits offered by Defendants are undisputed. They show that on December 16, 2016, Keane electronically submitted "I Agree" to the Signature Statement for the APA and that he had full access to the APA by clicking on the PDF copy of the program immediately above his Signature Statement. D. 13-1 ¶ 12; D. 13-1 at 24. DST, furthermore, maintains a record of all employees who submit an opt-out letter to the APA and Keane never submitted one. D. 13-1 ¶¶ 14-16. Given the record here that Keane submitted his APA and did

not opt-out of the APA, and the fact that Keane has not disputed that he did receive and electronically sign the APA, the Court concludes that Keane accepted the APA.

Lastly, Defendants have established consideration for the APA. "Consideration can . . . be provided by a mutuality of promises to arbitrate. Under Massachusetts law, the requirement of consideration is satisfied if there is either a benefit to the promisor or a detriment to the promisee." DeLuca v. Bear Stearns & Co., 175 F. Supp. 2d 102, 112 (D. Mass. 2001) (citations omitted). Defendants promised in the APA to submit any claims they had against Keane to arbitration and promised to be bound to the results in the arbitration process. See D. 18-2 at 4 (stating that the "APA also applies to any claims by DST against an Associate"). Thus, Defendants' promise to also bring its claims in arbitration is sufficient consideration.

Accordingly, the Court finds that Defendants have established that the APA is a valid and enforceable arbitration agreement.

### C. Defendants Are Entitled to Invoke the APA

Defendants have also established that they are entitled to invoke the APA. To establish same, Defendants must show that they are parties to the agreement containing the arbitration provision. See Perez-Tejada v. Mattress Firm, Inc., No. 17-12448-DJC, 2019 WL 830450, at *7 (D. Mass. 2019). The APA covers Defendant DST and "all affiliated entities . . ." D. 18-2 at 2. The claims against DST, its subsidiary Defendant ALPS, and Defendant SS&T, where Keane worked locally for DST, are thus subject to the APA.

### D. Keane's Wage and Breach of Contract Claims

Defendants have also established that Keane's wage and breach of contract claims fall within the scope of the APA. The APA "covers all legal claims arising out of or relating to

7

employment" including claims relating to "overtime or other compensation disputes" and "breach of contract." D. 18-2 at 4. Keane's claim that Defendants failed to pay him for his commissions falls within a "compensation dispute" and his breach of contract claim relating to same also falls within the claims governed by the APA. Accordingly, the Court finds that Keane's wage and breach of contract claims are governed by the APA.

### E.     Defendants Did Not Materially Breach APA

Keane argues that the APA is unenforceable because Defendants materially breached the APA when Defendants' counsel sent Keane's counsel a letter stating that because Keane refused to submit his claims to arbitration, Defendants would counterclaim in arbitration for breach of contract. D. 18 at 3, 6-7; see D. 18-3. As noted above, the APA provides that an employee "will not be subject to adverse action of any kind" for certain conduct, including "opting out or encouraging other associates to opt-out of this APA or opposing any provisions of this APA." D. 18-2 at 6. Keane argues that Defendants' counsel's letter breached this language in the APA, as his complaint in this case amounts to an opposition to the APA. D. 18 at 6-7.

"It is well established that a material breach by one party excuses the other party from further performance under the contract." Lantor Inc. v. Ellis, No. CIV.A. 98-01064, 1998 WL 726502, at *8 (Mass. Super. Oct. 2, 1998) (quoting Ward v. American Mut. Liab. Ins. Co., 15 Mass. App. Ct. 98, 100 (1983)). A breach is considered material when it goes to an "'essential and inducing part of the contract.'" J. J. Reidy & Co., Inc. v. AirWater Corp., 05-cv-40049-FDS, 2007 WL 9805550, at *6 (D. Mass. Sept. 30, 2007) (quoting Bucholz v. Green Bros. Co., 272 Mass. 49, 52 (1930)).

Here, however, there was no breach, material or otherwise, by Defendants. Defendants' counsel sent a letter to Keane on July 27, 2020, months after Keane already brought his lawsuit in the Superior Court, an action in contravention of the APA. See D. 18-3 and D. 1-1. It cannot be that Defendants' actions, through his counsel, which occurred after Keane already chose not to arbitrate, could be the material breach that excuses Keane's prior action. See In re St. Onge, 317 B.R. 39, 43 (D. N.H. 2004) (holding that the party that committed "the first material breach" excused the non-breaching party from performance). It is also not fair to characterize the complaint in this case as an objection or opposition to or opt-out of the APA. In the complaint, Keane does not allege that he opted out or encouraged other associates to opt-out of the APA nor that he opposes a particular provision of the APA. In fact, Keane's complaint is entirely silent as to the APA. D. 1-1 at 10-14. Thus, the APA's promise that an employee will not be subject to "adverse action" for "opting out or encouraging other associates to opt-out of this APA or opposing any provisions of this APA" is inapplicable here and Defendants' counsel's letter advising Keane's counsel of the reactive actions that it would take in light of Keane's breach of the APA does not constitute a material breach of same.

### F.     Keane's Age Discrimination Claims Before MCAD

Defendants also request that this Court compel Keane to arbitrate his claims pending before MCAD. Defendants acknowledge that this is a closer question for the Court. A "court should not compel arbitration unless and until it determines that the parties entered into a validly formed and legally enforceable agreement covering the underlying claims." Escobar-Noble v. Luxury Hotels Intern. Of Puerto Rico, Inc., 680 F.3d 118, 121-22 (1st Cir. 2012) (citations omitted). In his claims before MCAD, Keane claims that Defendants discriminated against him

based on his age in violation of the ADEA.  D. 18-1.  The APA covers claims of "employment discrimination . . . based on federal, state, or local statute, ordinance or government regulations . . ." D. 18-2 at 4.  Keane's claims that Defendants discriminated against him, therefore, fall under the scope of the APA if they were brought by Keane to this Court.  The APA, however, also provides that it "does not prevent or discourage an Associate from filing and pursuing an administrative proceeding before the Equal Employment Opportunity Commission . . . or any other federal, state or local administrative agency."  D. 18-2 at 5. Thus, while discrimination claims are within the scope of the APA, the APA exempts Keane's claims as they are now pending before MCAD, an administrative agency.  Even without the explicit language in the APA, moreover, an arbitration agreement cannot preclude an administrative agency enforcement action.  Joule, Inc v. Simmons, 459 Mass. 88, 95 (2011) (holding that MCAD is not a party to the employment agreement at issue, did not agree to arbitration and could not be bound by the agreement's arbitration provision).  Thus, based on the language in the APA and case law, MCAD is "empowered and entitled to pursue investigation of [Keane's] discrimination complaint."  Joule, 459 Mass at 96-97.

While "there is no legal bar to having an arbitration and the MCAD proceeding continue concurrently, on parallel tracks," id. at 99, the APA at issue here explicitly states that it is applicable to Keane's claims that are before an administrative agency when Keane "chooses to pursue a legal claim in addition to and/or following completion of such administrative proceedings, or if there is some other legal proceeding related to the claim following completion of the administrative proceedings. . ."  D.18-2 at 5.  At this juncture, Keane has not pursued a legal claim for his age discrimination "in some other legal proceeding" and his administrative

proceedings are still ongoing. Thus, under the terms of the APA, his claims before MCAD are not currently governed by the APA.

Accordingly, the Court denies the motion to the extent it seeks to compel arbitration on Keane's discrimination claims now before the MCAD.

## V. Conclusion

For the foregoing reasons, the Court ALLOWS Defendants' motion to compel arbitration as to Keane's wage and breach of contract claims in this case and stays this matter pending that arbitration but DENIES the motion as to Keane's age discrimination claims currently before the MCAD, D. 13.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge